BROPHY, RESPONDENT, *v.* IDAHO PRODUCE & PROVISION COMPANY, APPELLANT.

(No. 1,947.)

(Submitted September 28, 1904.  Decided November 10, 1904.)

*Contracts—Acceptance—Variance from Proposal—Statute of Frauds—Burden of Proof—Practice—Nonsuit—Submission on Plaintiff's Testimony.*

1.  Where the value of property involved in a sale is sufficient to bring the contract of sale within the provisions of Civil Code, Sections 2185, 2340, and Code of Civil Procedure, Section 3276, the burden is on plaintiff, in an action

for breach of the contract, to establish by a preponderance of evidence that a valid contract under the statutes was entered into between the parties, together with a breach of such contract, and the consequent damages.

2. An order for "choice" potatoes is not an acceptance of a proposal to sell "nice white potatoes (Peerless stock)."

3. Where a proposal offered for sale ten cars of "nice white potatoes (Peerless stock)," an order of purchase requiring the seller to select the stock and send no small ones constituted a variation from the proposal, and was not an acceptance.

4. A proposal to sell ten car loads of potatoes is not accepted by an order for potatoes which requires the cars to average 30,000 pounds, but such condition constitutes a variation from the proposal.

5. A proposal to sell ten cars of potatoes for winter use is not accepted by an order of eight cars for winter storage.

6. In order to constitute a binding contract, the terms of payment, as well as the other elements of the contract, must be agreed upon.

7. Defendant, if satisfied that the evidence introduced by plaintiff is not sufficient to warrant a recovery, may move for nonsuit, which raises a question of law, admitting the truth of the evidence but questioning its sufficiency, or, proceeding upon the theory that the jury will not believe plaintiff's testimany, may have the case submitted to the jury upon plaintiff's evidence alone, in which case the question submitted is one of fact, with the burden of proof on plaintiff to establish by a preponderance of the evidence the allegations of his complaint.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

Action by P. J. Brophy, doing business as P .J. Brophy & Co., against the Idaho Produce & Provision Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

*Mr. J. L. Wines,* for Appellant.

The proposal of defendant was not accepted by plaintiff, and the letter from plaintiff, dated September 14, 1901, was a rejection of defendant's offer. (Clark on Contracts, Hornbook Series, par. 19, pp. 36, 37, 38, 39; Clark on Contracts, par. 27, pp. 52, 53, 54; Brown on the Statute of Frauds, Sec. 371; 21 Am. and Eng. Ency., pp. 455-456 and notes; 3 Am. and Eng. Ency., pp. 852-853 and notes; *Breckenridge* v. *Crocker,* 78 Cal. 529; *Meux* v. *Hogue,* 91 Cal. 442; *Wristen* v. *Bowles,* 82 Cal. 84; *McCotter* v. *The Mayor,* 37 N. Y. 325; *Potts* v. *Whitehead,* 23 N. J. Eq. 512; *Bruce* v. *Pearson,* 3 Johnson Repts. 534;

*Baker* v. *Holt,* 14 N. W. 8; *Clay* v. *Rickerts,* 23 N. W. 755; *Weaver* v. *Burr,* 8 S. E. 743; *Eggleston* v. *Wagner,* 46 Mich. 610; *Johnson* v. *Stevenson,* 26 Mich. 62; *Martin* v. *N. W. Fuel Co.,* 22 Fed. Rep. 596; *Crabtree* v. *St. Paul Opera House Co.,* 39 Fed. 746; *Ortman* v. *Weaver,* 11 Fed. 358; *First Nat'l Bank* v. *Hall,* 101 U. S. 43; *Utley* v. *Donelson,* 94 U. S. 29; *Minn. & St. Louis Ry. Co.* v. *Columbia Rolling Mill Co.,* 119 U. S. 149; *Eliason* v. *Henshaw,* 4 Wheaton, 225; *Carr* v. *Duval,* 14 Peters, 77.)

Even if it be conceded that the letter of plaintiff to defendant, dated September 18th, was a sufficient acceptance under the authorities (which we do not admit), the same was not within a reasonable time, there being both mail and telegraphic communication between the points where the parties did business. (*Trouistine* v. *Sellers,* 11 Pac. Rep. 441; *Minn. Poi Company* v. *Collier Whitelead Company,* 17 Fed. Cases, p. 447, No. 9,635.)

*Messrs. McBride & McBride,* for Respondent.

The judgment appealed from was entered in this case upon the pleadings and the testimony on behalf of plaintiff and respondent Brophy—the defendant corporation declined to offer any testimony whatever in the case, and submitted the action to the court upon the testimony of plaintiff. The action of defendant and appellant in declining to offer any testimony was, in effect, a motion for nonsuit. "When all the evidence offered by the plaintiff has been given, and a motion for a nonsuit is interposed, a question of law is presented whether the evidence before the jury tends to prove all the facts involved in the right of action and put in issue by the pleadings—all that the evidence, in any degree, tends to prove, must be received as fully proved; every fact that the evidence, and all reasonable inferences from it, conduces to establish, must be taken as fully established." (*Ellis* v. *Ohio L. Ins. Co.,* 4 Ohio St. 645.)

The motion for a nonsuit is deemed to admit the truth of all the evidence introduced by the plaintiff; accordingly every fact

which the evidence tends to prove, and all reasonable deductions therefrom must be conceded to have been fully established for the purpose of deciding the motion, and all conflicting infer-ences or presumptions arising from the evidence must be resolved in favor of the plaintiff. (6th Ency. of Practice, pp. 942 and 943, and cases cited; *Soyer* v. *Great Falls Water Co.,* 15 Mont. 1; *State* v. *Benton,* 13 Mont. 306.)

On motion for a nonsuit, the court is bound to give the evidence the most favorable construction for the plaintiff which it will possibly bear. (*Inhoff* v. *Chicago Railroad Co.,* 22 Wis. 684; *Jensen* v. *Barbour,* 15 Mont. 582; *Holter Lumber Co.* v. *Firemen's Ins. Co.,* 18 Mont. 282; *State ex rel. Harmon* v. *Conrow,* 19 Mont. 104; *Cummings* v. *H. & L. S. R. Co.,* 26 Mont. 434.)

This testimony not only tends to show, but does show conclusively, that not only was Mr. Brophy satisfied to accept the terms made by the Idaho Produce & Provision Company, but, as a matter of fact, did accept the same, and honored the draft made upon him, the honoring of which draft was made by defendant the only condition asked by it as to further shipments of potatoes under the contract conceded by it to have been entered into. Defendant itself has construed the correspondence in evidence and by its pleadings concedes that it understood its effect to be a contract for the sale of ten carloads of potatoes at sixty cents per hundred weight, and, under such circumstances, the court will not disturb the conclusion reached by the parties themselves. (*King* v. *Dahl,* 84 N. W. 737; *Fairmount Glass Works* v. *Grunden-Martin Woodenware Co.,* 51 S. W. 196.)

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

This is an appeal by defendant from a judgment in favor of plaintiff and from an order overruling a motion for a new trial.

P. J. Brophy was doing business under the name of P. J. Brophy & Co. The defendant was a corporation. The contro-

versy arose over an alleged contract for the sale and delivery
of ten carloads of potatoes, the plaintiff asserting such sale and
a non-delivery. The defendant admits making an offer of sale
to plaintiff, and claims that the same was not accepted. The
value of the property involved in the alleged sale is sufficient
to bring the contract under the provisions of Sections 2185 and
2340 of the Civil Code, and 3276 of the Code of Civil Procedure.
The burden, therefore, was upon plaintiff to establish by a pre-
ponderance of evidence that a valid contract under the above
statutes was entered into between the parties, its breach, and
his damages. There is no dispute but that defendant failed to
perform the contract, if one was made; neither is the amount of
damages sought to be established by plaintiff contested. The
only question, therefore, for our consideration is whether a valid
contract was established by plaintiff's proofs. The defendant
offered no testimony, but relied upon that offered by plaintiff
as not being sufficient to establish a valid contract; so that there
is no conflict in the testimony, and the only question is, did the
testimony offered by plaintiff, as a matter of law, establish a
valid contract for the sale of ten carloads of potatoes?

Section 2185 of the Civil Code provides: "The following
contracts are invalid, unless the same, or some note or memo-
randum thereof, be in writing and subscribed by the party to be
charged, or his agent:  *  *  *  (4) An agreement for the sale
of goods, chattels or things in action, at a price not less than
two hundred dollars, unless the buyer accept or receive part of
such goods, chattels or the evidences, or some of them, of such
things in action, or pay at the time some part of the purchase
money  *  *  *"

Section 2340 of the Civil Code provides: "No sale of per-
sonal property, or agreement to buy or sell it for a price of two
hundred dollars or more, is valid, unless: (1) The agreement
or some note or memorandum thereof be in writing, and sub-
scribed by the party to be charged, or by his agent; or, (2) the
buyer accepts and receives part of the thing sold, or when it con-
sists of a thing in action, part of the evidences thereof, or some

of them; or, (3) the buyer at the time of sale, pays a part of the price."

Section 3276 of the Code of Civil Procedure provides: "In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent; evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents; * * * (4) An agreement for the sale of goods, chattels or things in action at a price not less than two hundred dollars, unless the buyer accept and receive part of such goods and chattels, or the evidences, or some of them, of such things in action, or pay at the time some part of the purchase money. * * *"

As above stated, the proof must, therefore, have shown an agreement which is covered by Subdivision 4 of Sections 2185 of the Civil Code and 3276 of the Code of Civil Procedure and by Section 2340 of the Civil Code. The evidence of the sale under Section 3276 of the Code of Civil Procedure must be in writing, or secondary evidence of such writings, and perhaps such oral testimony as is explanatory of ambiguities in the writings.

The alleged contract consists of the following correspondence between the parties: It seems that about September 6, 1901, appellant sent to respondent a trade circular (which is not in evidence), by which it announced the fact that it was prepared to furnish farm produce to purchasers. On September 10, 1901, respondent wrote the following letter to appellant: "Gents: Replying to your favor of the 6th inst., we will be pleased to have you quote us prices on potatoes for winter use, say from six to ten cars, shipments to be made within the next six weeks. Your very best efforts in this direction will be appreciated by, yours truly." By this letter respondent requested appellant to make him a proposition or offer to sell "from six to ten cars" of "potatoes for winter use," to be shipped "within the next six weeks." In reply to this letter appellant sent respondent the following under date of September 12th: "Your favor of the

10th inst. at hand and noted. We can furnish you ten cars of nice white potatoes (Peerless stock) at 60c. per hundred sacked, f. o. b. Rexburg. We also have some stock, but a little scabby, at 55c. per H. at this point. * * *" By construing this letter with that of respondent's of the 10th, above quoted, appellant offered to sell respondent "ten cars of nice white potatoes (Peerless stock) at 60c. per hundred, sacked, f. o. b. Rexburg," and "some stock, but a little scabby, at 55c. per H. at this point," which were to be for winter use, and shipped within six weeks from September 10th. This was the only offer appellant made. All that was required to make a valid contract between the parties was the acceptance by respondent of this offer within a reasonable time.

Judge Graves, of the Supreme Court of Michigan, in the case of *Eggleston* v. *Wagner*, 46 Mich. 610, 10 N. W. 37, states the rule as to the acceptance of an offer in the following clear and concise language: "In order to convert a proposal into a promise, the constituents of the acceptance tendered must comply with and conform to the conditions and exigencies of the proposal. The acceptance must be of that which is proposed, and nothing else, and must be absolute and unconditional. Whatever the proposal requires to fulfill and effectuate, acceptance must be accomplished, and the acceptance must include and carry with it whatever undertaking, right or interest the proposal calls for, and there must be an entire agreement between the proposal and acceptance in regard to the subject-matter and extent of interest to be contracted. If the parties do not refer to the same things in the same sense, the transaction is simply one of proposals and counter proposals." This language is quoted with approval by Mr. Mechem in his work on Sales (Section 288), and numerous other cases are cited in its support.

In *Potts* v. *Whitehead*, 23 N. J. Eq. 514, the court says: "An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but

exactly meeting them at all points, and closing with them just as they stand." .

The Supreme Court of the United States, in the case of *Minneapolis, etc. Ry.* v. *Columbus R'g Mill,* 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376, says: "As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept or an acceptance upon terms varying from those offered is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it." In fact, the cases holding this doctrine are legion, and no occasion arises for incumbering this opinion with further citations.

Now, remembering that the proposal was to sell "ten cars of nice white potatoes (Peerless stock) at 60c. per hundred, sacked, f. o. b. Rexburg," or "some stock, but a little scabby, at 55c. per H. at this point," which potatoes were to be for winter use, and shipped within six weeks after September 10th, let us see what action the respondent took upon such proposal, and whether or not he accepted the same within the rules above laid down. Respondent replied to the letter of September 12th, above quoted, on the 14th of September, in the following language: "We have your favor of the 12th inst. and would be glad to have you ship us immediately, as we are entirely out of stock now, *one* carload of potatoes. Will instruct you as to the balance later, but your expedition in this matter will be highly appreciated." Nothing is said herein as to whether respondent accepts either of the propositions stated in appellant's letter of the 12th, but orders one carload of potatoes. He does not say whether such car shall be of the nice white potatoes (Peerless stock), or of the

stock which appellant said was a little scabby.  Again, on September 18th respondent wrote appellant as follows: "Replying to your favor of the 12th and 16th, with reference to the one car of potatoes ordered by us on the 14th, we wish you would give us the quickest service possible, as we are at this time almost entirely out, and referring to your offer of the 12th on ten cars choice potatoes, there is no especial rush about this except that we want to get them in after they have fully matured and before any risk of freezing must be taken into account.  That is to say, during the month of October will be all sufficient, commencing from the 12th to the 15th, and shipping a car every two or three days until the amount will have been delivered. You of course will select the stock for us, and send no small ones.  We expect the cars to average 30,000.  By the way, if you have shipped the first car by this time we can use another on or about the 1st of October, and the eight for winter storage may then come along as above indicated, commencing about the 12th.  We feel that they will be fully matured by that time, but if our judgment in the matter is wrong we will be glad to abide by yours."

Do these two letters, or either of them, constitute an acceptance of the proposal made by the appellant, within the rule above announced?  We do not think they do.  In the first place, the offer was ten cars of "nice white potatoes (Peerless stock)." The letter of the 18th refers to an offer of ten cars of "choice potatoes."    Whether   or   not   "nice   potatoes   (Peerless stock)" and "choice potatoes" are of the same grade and price the evidence does not disclose, and we are therefore left in doubt. The word "choice" is defined as "meriting preference; having special excellence; select; precious." (Standard Dictionary.) The word "nice" is defined: "(1) Characterized by discrimination and judgment; acute; discerning.  *  *  *  (4) Exactly fitted or adjusted; accurate; apt.  *  *  *  (5) Delicately constructed; hence, easily disarranged or injured; fragile; tender.  (6)  *  *  *  Agreeable or pleasant in any way.  *  *  * Specifically: pleasing to the senses." (Standard Dictionary.)

We are of the opinion that when the appellant proposed to sell "nice" potatoes (Peerless stock), and the respondent expected "choice" potatoes, that it was not an acceptance of the proposal.

But again, in the letter of the 18th respondent says, "You of course will select the stock for us and send us no small ones." It will be noticed that nothing of this kind is stated in the offer —simply "ten cars of nice white potatoes (Peerless stock)." By the proposal it was undoubtedly intended to offer to defendant ten cars of nice potatoes (Peerless stock), as they run from the digging of the same; not that there should be no small ones among them. The small potatoes may be as nice as large ones, but not as choice. We are of the opinion that this was a variation from the proposal.

Again, respondent says in the letter of the 18th, "We expect the cars to average 30,000." Nothing is said in the proposal about the average weight of the cars. The proposal was to send ten carloads of potatoes. The number of pounds of potatoes in each car, therefore, would be such as are usually loaded in a car for transportation, and would depend somewhat on the size of the cars, and the rules of the railroad company shipping the potatoes as to the weight which might be put in each car. We are of the opinion that this also was a variation from the proposal.

But again, the proposal was for ten carloads of potatoes. By respondent's letter of the 12th of September he says: "We would be glad to have you ship us immediately as we are entirely out of stock now one carload of potatoes. Will instruct you as to the balance later, but your expedition in this matter will be highly appreciated." In the letter of September 18th respondent says: "By the way, if you have shipped the first car by this time we can use another one shipped on or about the 1st of October, and the eight for winter storage may then come along as above indicated, commencing about the 12th."

We find in respondent's testimony disclosed in the record the following statements: "I have said that the one car of potatoes which I paid for at 90 cents per hundred has nothing to do with

the ten cars which I spoke of in my letter of September 14th. I bought that car as a separate proposition. The balance which I referred to in that letter was the balance of the ten cars which defendant had quoted. It referred to the balance of ten cars agreed to be shipped, taking one car out. There was one car shipped to me by defendant. That car was quoted me by telegram. There is a letter which has not been offered in evidence, which refers to my order for one separate car. That letter has not been offered. It has been overlooked. It has nothing to do with the ten carloads sued for. The car which was shipped me was furnished to me at the price of 95 cents per hundred. I refused the offer at first, and then found myself obliged to order it shipped. This car was shipped on the 21st of September, and was billed at 95 cents per hundred. That car has nothing to do with the ten cars of potatoes mentioned in the letter of September 18th." Yet we find in the letter of September 18th that respondent seemed to include this car and another ordered to be shipped about the 1st of October in the ten cars claimed by him to have been bought of the appellant, for he says, "By the way, if you have shipped the first car by this time we can use another one shipped on or about the 1st of October, and the eight for winter storage may then come along as above indicated." It must be remembered that the request for proposal was for potatoes for winter use, and that the appellant proposed to sell ten cars of such potatoes. It is admitted by respondent that one car was paid for at either 90 or 95 cents per hundred, when the contract was for 60 cents per hundred, and that this car, together with one ordered to be shipped about October 1st, were for present use, and only eight cars were wanted for winter storage. The proposal to sell ten cars of potatoes for winter use and the acceptance of eight cars for winter storage are not consistent one with the other. The record further discloses that on the 15th day of October appellant wrote to respondent as follows: "Potatoes are now selling at this point at 75 cents per hundred. Have no doubt but that they will be cheaper later on. Will send you prices on car of mixed vegetables later." Appellant had

already shipped one car of potatoes either at 90 or 95 cents, and by this letter gives the prevailing price at his place of business to be 75 cents per hundred. In reply to this letter respondent wrote as follows on the 17th day of October: "We have your favor of the 15th inst. and replying thereto we must ask your attention to your letter of September 12th wherein you advise us that you can furnish us ten cars of nice white potatoes, Peerless stock, at 60c. per hundred, sacked, f. o. b. Rexburg. We accepted this offer immediately upon its presentation to us and now we must advise you that we want the potatoes and as this is the best season in which to ship them we want them shipped as quickly as possible according to our instructions on the point. They can be shipped now with much less risk than later when weather conditions will be less reliable. We do not want to take the risk of waiting for the market to decline to suit your figure while the delay will probably drive the shipment so far into the winter that the danger from freezing would more than counterbalance the gain by you from the declining market. So therefore we expect you to commence shipping the potatoes as soon as possible at the price at which you sold them to us. We trust you will advise us by the 20th inst. that you have commenced shipping, as otherwise we will be obliged to purchase them for your account." On the 19th of October, 1901, appellant replied to this letter as follows: "In reply to yours of the 17th inst. will say: We understand you want thirty days time on potatoes. Now we are paying cash for our potatoes and our terms with our customers are strictly cash, upon reasonable time for inspection, and we expect a remittance from you before we ship any more potatoes, and to that effect we have drawn sight draft on you to-day." In reply to this letter respondent wrote as follows: "We have your favor of the 19th inst. wherein you observe that you understand that we want thirty days time on potatoes. Your understanding in this matter is generally correct, in this, that thirty days time on potatoes, butter, eggs, poultry and produce of all description is general; but you advise us that your terms with your customers are strictly cash, and therefore

you want cash after the lapse of a reasonable time for inspection of shipment. This is of course quite satisfactory to us. We realize that your contract to furnish us with ten cars of potatoes would involve the investment of quite a little money, and on this account it will be a pleasure to us to remit for each car as soon as it has arrived and is inspected. What we want you to do, however, is to ship the potatoes. You volunteer to deliver ten cars at 60c. and now when we want delivery made, you seem to be a little slow about it. We wired you yesterday on receipt of your letter as follows: 'Will you commence shipping according to yours of September 12th, if we honor draft. Your terms, reasonable time for inspection, acceptable to us. Answer,' which we now confirm, and awaiting," etc., "we remain." It appears from the testimony of respondent that the draft mentioned in this correspondence was a draft made by appellant upon respondent for the first carload of potatoes ordered by respondent's letter of the 14th, and, as respondent says, had nothing to do with the ten cars of potatoes under the alleged contract, but was an extra car, ordered separately. In reply to this telegram and letter the appellant telegraphed respondent on October 21st, "Draft must be honored before further shipment." In reply to this respondent telegraphed: "Draft honored. We expect you to ship potatoes now as per your proposition of September 12th." In regard to this one car of potatoes ordered by letter September 14th the respondent further says: "I have personal knowledge of the draft referred to in this telegram of October 21, 1901, from defendant. It is a sight draft that defendant had made upon me for the carload of potatoes shipped to me at 90c. per hundred from the defendant. This carload of potatoes was not such potatoes as would be required for winter storage."

It is apparent from the record that several communications passed between the parties which were not offered in evidence, and are therefore not in the record. It may be that such communications would have explained a great many apparent inconsistencies in the letters and telegrams in the record, but, not

being in the record, we must construe the letters and telegrams as they appear. It appears, judging from the letters and telegrams in the record, that on September 14th respondent ordered one car of potatoes for immediate use. On September 18th he ordered another car, to be shipped about October 1st. The first car was shipped, and a sight draft made by appellant upon defendant for the potatoes included therein at 90 cents per hundred. Before the 19th of October respondent must have indicated in some manner that he desired thirty days' time on the potatoes, and the appellant stated that, "We expect a remittance from you before we ship any more potatoes, and to that effect have drawn sight draft on you to-day." It must be remembered that at that time there was no other order given by respondent to appellant for shipment of any potatoes execept one car, which was ordered shipped about October 1st. This language in appellant's letter may have had reference to such car. If it had reference to the alleged contract to purchase all ten cars it would show that a valid contract had not been entered into for such purpose, because there seemed to be a disagreement between the parties as to the time of payment. Therefore the minds of parties had not met, and no contract existed. The terms of payment, as well as the other elements, must be agreed upon. (*Washington Ice Co.* v. *Webster,* 62 Me. 341, 16 Am. Rep. 462.)

It would have been very easy for respondent, upon receipt of appellant's letter of September 12th, to have written in reply, "We hereby accept the first proposal contained in your letter of September 12th." This would have covered the entire matter. This would have established a valid contract, under the statutes of this state, for the sale and delivery of ten cars of nice white potatoes (Peerless stock) at the price of 60 cents per hundred, f. o. b. Rexburg; but this acceptance was not given. Respondent, in his letters of the 14th and 18th of September, ordered two cars of potatoes for immediate use, which he says were not potatoes fit for winter storage, and by this letter of the 18th directed that the remaining eight cars for winter storage should

be shipped a little bit later. Instead of ten cars of nice potatoes (Peerless stock) for winter use, the respondent's proof shows an acceptance of only eight cars of choice potatoes. He insisted that there should be no small ones among them, and that each car should contain 30,000 pounds. The letters of the 14th and 18th were, in effect, a counter proposition, and not an acceptance, under the above authorities.

It will be noticed that in the brief of respondent the position is taken that, the defendant in the court below declining to offer any testimony and submitting the action to the court upon the testimony of plaintiff, was, in effect, a motion for a nonsuit, and respondent urges that the law has been declared by this and other courts that a motion for nonsuit is deemed to admit the truth of all the evidence introduced by plaintiff, and that every fact which the evidence tends to prove and all reasonable deductions therefrom must be conceded to have been established for the purpose of deciding the motion, and all conflicting inferences or presumptions arising from the evidence must be resolved in favor of plaintiff; that the court is bound to give the evidence the most favorable construction for plaintiff which it will possibly bear. In this position counsel for respondent have fallen into error. There is no rule of law which requires a defendant in the trial of a case in the court below to offer any evidence. If he is satisfied that the evidence introduced on behalf of plaintiff is not sufficient, upon any theory, to warrant a recoveery, he may avail himself of that position by making a motion for nonsuit, which is, in effect, raising a point of law, and is tantamount to saying, "We admit the truth of all your evidence, but say as a matter of law that it is not sufficient"; or he may proceed upon another theory, and that is that the jury will not believe the testimony introduced by plaintiff, and submit the case for a finding of the jury upon the evidence the plaintiff has introduced. And upon this proposition it must be remembered that the burden is upon the plaintiff to establish by a preponderance of the evidence the allegations of his com-

plaint, and the question to be submitted is one of fact, and not of law.

We are clearly of the opinion that the record does not disclose an acceptance of appellant's proposition under the authorities above cited, and therefore that the plaintiff failed to show a valid contract. Therefore the case must be reversed, and we so advise.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded.