HELENA ADJUSTMENT CO., APPELLANT, *v.* CLAFLIN, RESPONDENT.

(No. 5,817.)

(Submitted January 11, 1926. Decided February 2, 1926.)

[243 Pac. 1063.]

*Fraud — Evidence — Insufficiency — Costs — Witness Fees and Mileage—When Allowable.*

Fraudulent Representations—Evidence—Insufficiency.
  1. In an action for alleged fraudulent representations by defendant as to amount of goods stored with him on which he claimed a lien for storage charges, on the strength of which representations plaintiff paid such charges to enable him to attach the goods, evidence *held* insufficient to warrant submission of the case to the jury.

Same—Failure of Plaintiff to Ascertain Truth or Falsity of Representa-
tions Defeats Action, When.

2. Where a party who claims to have been deceived to his prejudice
by false representations had the means at hand to ascertain whether
the statements made were true or not but failed to do so, his reli-
ance upon the representations, however false, afford him no ground of
complaint.

Costs—Witness Fees and Mileage Allowable Even Though Witness not
Served With Subpoena.

3. A material witness who resided outside the county in which the
case was tried at a distance greater than thirty miles and voluntarily
attended the trial at the request of the prevailing party, and who
after his arrival on the day set for trial had to wait for about a
week before he was required to testify, on account of congestion of
court business, was entitled to *per diem* for the whole time he was
in attendance and not only for the day on which he gave his testi-
mony, as well as to mileage, the service of a subpoena not being a
prerequisite to their allowance.

Same—Attendance of Witnesses—Necessity of Attendance—Good Faith
on Part of Litigants Required.

4. Good faith must be exercised by litigants in procuring the at-
tendance of witnesses, whether by means of subpoena or where they
are induced to appear voluntarily, and the court may, on motion to
retax costs, consider the necessity of the witness' attendance, the cir-
cumstances under which he is called, and the like.

---

[1] Fraud, 26 **C. J.**, sec. 3, p. 1061, n. 25; sec. 6, p. 1062, n. 50; 27
**C. J.**, sec. 208, n. 61.

[2] Fraud, 26 **C. J.**, sec. 68, p. 1150, n. 79; sec. 75, p. 1162, n. 8, 9, 10.

[3] Costs, 15 **C. J.**, sec. 280, p. 128, n. 16; sec. 298, p. 133, n. 74.
Evidence, 23 **C. J.**, sec. 1876, p. 88, n. 92.

[4] Costs, 15 **C. J.**, sec. 280, p. 129, n. 17 New; sec. 455, p. 190,
n. 76 New. Witnesses, 40 **Cyc.**, p. 2163, n. 82; p. 2182, n. 92; p. 2185,
n. 15; p. 2188, n. 47.

*Appeal from District Court, Lewis and Clark County;
W. H. Poorman, Judge.*

ACTION by the Helena Adjustment Company against R. H.
Claflin. From the judgment for defendant, plaintiff appeals.
Affirmed.

*Messrs. Spaulding & McConnell,* for Appellant, submitted
a brief; *Mr. C. A. Spaulding* argued the cause orally.

---

2. See 12 **R. C. L.** 360.

3. Right of witness who is nonresident of county to *per diem* and
mileage, see notes in 7 **Ann. Cas.** 163; 10 **Ann. Cas.** 397.

*Mr. Henry C. Smith,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of· the court.

This action was brought to recover the sum of $72.18, alleged to have been paid by reason of certain false and fraudulent representations, upon which the plaintiff acted with resultant damages. Issue was joined by the defendant's answer and reply made thereto by the plaintiff. The cause was tried before a jury, and, at the conclusion of all of the evidence submitted by both parties, the defendant moved the court to direct the jury to return a verdict in his favor, which motion was granted, the jury discharged from further consideration of the case, and judgment ordered in favor of the defendant, together with his costs, and for the dismissal of the plaintiff's complaint. Judgment was entered accordingly. Defendant filed a cost bill in the action for the total sum of $53.90. Motion was made by plaintiff to retax the costs, directed specifically to an allowance made to Francis McLeod as a witness for the defendant for seven days' attendance upon the court, from May 15 to May 22, 1925, excluding Sunday, for the sum of $21 which was by the court denied. The appeal is from the judgment.

But two questions are involved necessary for determination by this court in disposition of the appeal, *viz.*: (1) Did the court err in taking the case from the jury; and (2) Did the court err in refusing to retax the costs?

[1] 1. It appears that on or about the fourteenth day of October, 1924, the plaintiff commenced an action in the district court of Lewis and Clark county against one G. E. Stillwell to recover the sum of $615.13, together with an attorney's fee of $75 and the costs of suit. A writ of attachment was issued in that action, which was delivered to the sheriff of Lewis and Clark county, who, in pursuance thereof, levied upon certain household furniture and effects belonging

to Stillwell in the possession of R. H. Claflin. Thereafter, about the 4th of December, 1924, a judgment was regularly entered in that case in favor of the plaintiff in the sum of $757.17, together with costs. On the date last mentioned an execution was regularly issued on the judgment and placed in the hands of the sheriff of Lewis and Clark county, and levy was by him made upon the attached property in the possession of Claflin to satisfy the judgment. Prior to the time that the property was levied upon by the sheriff under the execution, one I. R. Eidell, president and manager of the Helena Adjustment Company, interviewed R. H. Claflin, who held the goods of Stillwell in storage, and was informed by Claflin that there were certain charges due on the property amounting to the sum of $108.18, for which Claflin stated he had a lien, and demanded the payment thereof before the property should be turned over to the sheriff under the execution. The plaintiff asserts that, in pursuance of Claflin's demand, and in reliance upon his statements, and in belief that the same were true, I. R. Eidell, its managing agent, paid to Claflin, on December 6, 1924, the amount claimed to be due on the property for storage; that had it not been for such representations the money would not have been paid to Claflin. In the complaint it is alleged that the representations so made to I. R. Eidell respecting the amount of money due for storage were false, that Claflin knew them to be false, and that they were made with the intent and purpose of defrauding the Helena Adjustment Company, as there was not in fact any greater amount due Claflin for storage than the sum of $36, in consequence whereof the plaintiff herein was defrauded and damaged in the sum of $72.18.

I. R. Eidell, as a witness for the plaintiff, testified that at the time that action was institued and the writ of attachment issued he had a conversation with Mr. Claflin respecting the storage of the property of Stillwell, the character of such property, and the amount due thereon for storage. Claflin

showed him the ledger sheet, and said there was $100 and some odd cents due, and that if such amount were paid to him there would be no objection to the plaintiff taking the property. The ledger sheet exhibited by Claflin showed the account of G. E. Stillwell with Claflin, wherein appears at the top of the statement "Rate $1.50 per mo.," under which itemized charges appear as follows: "1923 Forward, $72.70." Then a separate charge for every month's storage is shown at the rate of $1.50 per month during 1923, beginning with March 20 and ending with January 20, 1924. The account is then carried on the same sheet, and shows "1924 Jan. 1. Brought down $87.70," storage January 20 to April 20, at the rate of $1.50 per month, each month being separately shown. "Interest to April 7, $13.98"; then the storage charges are shown for each month at $1.50 per month, April 20 to December 20. Total $118.18. A credit of $10 cash is shown, leaving a balance due of $108.18. After further negotiations and just before the property was delivered on the execution, Eidell, acting on behalf of the Helena Adjustment Company, paid to Claflin the amount so claimed by him, and received a receipt therefor, dated December 6, 1924, from which the following appears:

"Storage on goods in lot No. 1308.    Charges balance.

Bill rendered.............................$106.68

Nov. 20, storage to Dec. 20.................    1.50

                                                           $108.18

"Paid Dec. 6, F. M. Claflin Van & Storage, Helena, Montana."

He further testified that at the time he made payment of the amount of Claflin's claim against the property he had never seen or examined it, due to the fact that Mr. Claflin had told him that the property was stored in a distant warehouse, and that it was covered up with other goods and was difficult to get at. Although he asked to see an inventory of it, lt was not shown to him; Claflin indicating that it had

been mislaid. In making the payment to Claflin, however, Eidell says that he went upon the assumption that a person living in apartments such as are to be found in the "Blackstone Apartments, are supposed to be very wealthy," and "are not supposed to have very poor furniture"; that he was told that "it was pretty nice stuff." He testified: "I thought I was getting a big lot of furniture—three or four—probably eight or nine hundred dollars worth of furniture"; that his client told him "the Stillwell stuff was pretty nice stuff." That he knew from Mr. Claflin that Stillwell "bought good goods," and that he had knowledge that at least a portion of the furniture had been bought from Claflin. And further, he stated that he thought there must be "a big lot of furniture" in storage in consequence of the amount of Claflin's bill. After Eidell had paid the amount of Claflin's claim against the goods and they were delivered to the sheriff under the execution, Eidell found for the first time that the goods were not so extensive or valuable as he had anticipated. He then made protest to Mr. Claflin that the goods delivered were not in quantity such as he expected. He testified that: "When Mr. Claflin tried to deliver the goods at Curtin's I was there to receive it; I expected a big dray load full of goods; when I found only a small dab of goods, I immediately went to the telephone and telephoned Mr. Claflin and wanted to know what all this meant. 'Why,' he said, 'you got all the goods that was there of Stillwell's.' 'Well,' I said, 'you can't charge that much storage on it.' 'Well,' he said, 'I had another bill against this in there.' Q. Did you say anything further to him about this? A. Yes, I said a few things.    Q. What did you say to him; what did he say to you? A. Well, he said: 'Well, I have got the money.'" Subsequent to this telephone conversation Eidell saw Claflin and talked to him concerning the matter in an endeavor to bring about an adjustment, and Claflin did not take very kindly to it. The witness insists the charges shown him against

Stillwell were for storage, and states that after he found the goods were not so extensive or valuable as he had expected he protested to Claflin the amount of the storage charges which had been paid thereon, saying: "You told me this whole bill was for storage on the goods, and the goods have only been in storage for two years; you could not have the figure of $108 for 24 months at $1.50 a month; I am going to sue you for the balance." To which Claflin replied that he had another bill against the property; that he had delivered all of Stillwell's goods, and so far as threatened suit was concerned to "shoot." The storage charges in fact only amounted to about $38, but the sum of $108.18 was paid to Claflin, Eidell says, upon the assumption and belief that that was the correct amount due for storage, and he states that he would not have made payment of such an amount had he not understood it was all for storage charges. Claflin having refused to make refund of any part of the money so paid to him by the plaintiff, this action was instituted.

This is substantially all of the evidence upon which the plaintiff relies in support of his case and contention made that the court was in error in taking the cause from the jury. From the evidence introduced by the defendant it appears that Stillwell had purchased a considerable amount of the goods in storage from Claflin, on which there was a balance remaining unpaid, and that at the time they were delivered to Claflin for storage Stillwell agreed that they might be held by Claflin as security for the amount of Stillwell's indebtedness thereon, amounting to the sum of $72.70. He denies any fraud or fraudulent representations made to the plaintiff in the transaction, and asserts that the plaintiff paid the amount of the Claflin bill as shown by the books with full knowledge of all of the facts respecting the conditions under which they were held, Eidell asserting that he had information from his client that they were of value far in excess of Claflin's bill.

Is the evidence sufficient in law to warrant the submission of the question of fact to a jury? We think not. Apparently, the plaintiff paid its money "for a pig in a poke." Its manager thought he was making a splendid investment from information before him, so he paid his money for the release of the property "sight unseen," and he afterwards simply found that he had made a bad bargain. The alleged fraud was not sufficiently established, and there was nothing to be passed on by the jury.

As defined by our statute, section 7480, Revised Codes of 1921: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; (3) The suppression of that which is true, by one having knowledge or belief of the fact: (4) A promise made without any intention of performing it; or (5) Any other act fitted to deceive."

"In order to go to the jury the plaintiff must make out a *prima facie* case embracing the elements of actual fraud, *viz.*: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. 26 C. J. 1062." (*Lee* v. *Stockmen's Nat. Bank*, 63 Mont. 262, 207 Pac. 623.)

"When it appears that a party, who claims to have been [2] deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth  *   *   *

of any representation made to him, his reliance upon such representations made to him, however false they may have been, affords no ground of complaint.'' (*Grindrod* v. *Anglo-American Bond Co.,* 34 Mont. 169, 85 Pac. 891; *Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950; 26 C. J. 1149.) ''One cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon independent investigation.'' (26 C. J. 1162.) So that where, as in this case, there is no substantial evidence in support of the alleged fraud, a question of law is presented for the court's decision, and the cause was properly taken away from consideration by the jury. (*Lee* v. *Stockmen's Nat. Bank, supra; Escallier* v. *Great Northern R. Co.,* 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *Brophy* v. *Idaho Produce & Provision Co.,* 31 Mont. 279, 78 Pac. 493.)

2. As stated, the motion to retax costs is based upon plain-
[3] tiff's contention that a witness who attends court voluntarily, without subpoena, is not entitled to mileage nor *per diem* allowance of more than for the days in attendance when actually engaged in giving testimony as a witness. It appears that the cause was set for trial for May 15, 1925, and that Claflin induced the witness Francis McLeod to come voluntarily to Helena on that date, without subpoena, from her home at Norris, in Madison county, to give testimony in the action as one of his witnesses. Because of congestion of the court calendar the case was not called for hearing until May 22, and it was on that date that the witness gave her testimony. Was the item of costs included in defendant's cost bill for the attendance of this witness, amounting to $21, properly allowable? She was paid by Claflin, for her attendance upon the court, her actual traveling expenses incurred and at the rate of $3 per day from May 15 to May 22, inclusive. Her actual expenses amounted to $20.04 and her *per diem* to $24,

the total cost to Claflin for the witness' attendance amounting to $44.04. Judicially it is known that Norris is more than thirty miles away from Helena.

Process by which a witness is required to attend upon court in an action is by subpoena (sec. 10618, Rev. Codes 1921), and a witness is not required to appear out of the county in which he resides unless the distance from his place of residence to the place of trial be less than thirty miles. (*Id.* 10622.) A person present in court may be compelled to testify in the same manner as if he were in attendance upon a subpoena issued by the court. (*Id.* 10623.) A witness in a civil or criminal action before a court of record is entitled to a *per diem* of $3 for every day he is in attendance upon court as a witness, and for mileage, in traveling to the place of trial and returning to the place from whence he was called, at ten cents for each mile. (*Id.* 4936.) And witness fees and mileage are proper items of cost to be allowed the prevailing party in a civil action. (*Id.* 9787, 9804). The party to whom costs are awarded is entitled to include in his bill of costs his necessary disbursements including the "legal fees of witnesses, including mileage." (*Id.* 9802.) As to state cases, the statute provides, without reference to the reason for the attendance of the witness: "The clerk of any court before which any witness shall have attended on behalf of the state or county, in any civil action, must give to such witness a certificate, under seal, of travel and attendance, which shall entitle him to receive the amount therein stated from the state or county treasurer." (Sec. 4903, Rev. Codes 1921.) We have no similar or other statute applicable to civil cases generally; and, [4] in the absence of specific legislation on the subject, we are called upon to determine whether a witness who voluntarily attends the trial of a case as a witness, at the request of one of the parties, is entitled to *per diem* for the days in actual attendance and to mileage. We are of opinion that

[75 Mont. 317.]

it is a subject proper for determination by the court in each instance arising, based upon the facts made to appear respecting the necessity of the witness' attendance and the circumstances under which he is called, and remains in attendance upon the court. Justice requires the attendance of material witnesses, cognizant of material facts; hence encouragement should be given them to voluntarily attend upon a trial and give oral testimony concerning facts within their knowledge. No obstacle or hindrance should be placed in their way. As such testimony may be essential in the due administration of justice, a witness ought to be protected in coming voluntarily into our courts to aid in the ascertainment of truth in the accomplishment of right results. (*State ex rel. Coe* v. *District Court,* 73 Mont. 265, 235 Pac. 766.) The only office of a subpoena is to compel the attendance of a witness, and it seems to us a matter wholly immaterial to the plaintiff whether the witness was subpoenaed or not. Good faith on the part of litigants is required in procuring the attendance of witnesses at a trial by means of compulsory process as well as where they are induced to appear voluntarily. (*Burrow* v. *Kansas City Co.* (C. C.), 54 Fed. 275.)

In the case before us, had the witness been required to attend per force of a subpoena, the result would have been the imposition of additional costs upon the plaintiff; so that where the witness was a material one, as in this instance, plaintiff should not be heard to complain.

The conclusion thus reached is supported by the weight of authority and by former decisions of this court. (40 Cyc. 2182; *Vence* v. *Speir,* 18 How. Pr. (N. Y.) 168; *Burrow* v. *Kansas City Co., supra;* *Great Falls Meat Co.* v. *Jenkins,* 33 Mont. 417, 84 Pac. 74; *In re Gallatin Irr. Dist.,* 48 Mont. 605, 140 Pac. 92; *Spaulding* v. *Maillet,* 57 Mont. 318, 188 Pac. 377.) In our opinion, the service of a subpoena upon a witness is not a prerequisite to the allowance of *per diem* for at-

tendance and mileage.   (*Burrow* v. *Kansas City Co., supra;* 40 Cyc. 2182.)   And in the absence of a clear showing of bad faith on the part of the prevailing party in calling a witness, the trial court's action in allowing him mileage and *per diem* will not be interfered with on appeal.   (*Spaulding* v. *Maillet, supra.*)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.