R. H. YOUNG, Plaintiff and Appellant, *v.* KURT HAND-
ROW, Defendant and Respondent.

No. 11035.
Submitted May 7, 1968. Decided June 26, 1968.
443 P.2d 9.

H. A. Bolinger, Jr. (argued), Bozeman, for plaintiff and appellant.

Douglas R. Drysdale (argued), Bozeman, for the defendant and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

. This is an appeal from a judgment of the District Court of the Eighteenth Judicial Distict, in and for the County of Gallatin, the Honorable Judge W. W. Lessley, presiding without a jury.

In the district court the plaintiff, R. H. Young, the appellant before this Court, filed a complaint asking for the rescision of a contract for the sale of personal property; asking that the defendant be ordered to return possession of all property covered by the contract to the appellant; and that the defendant, Kurt Handrow, respondent before this Court, be ordered to assign to the appellant a lease for a building which was used in connection with the personal property sold.

Respondent counterclaimed, asking that the contract be cancelled and that all money paid under the contract be returned to him, with interest, and for the costs of the suit.

Judge Lessley, in his judgment, awarded the respondent $10,871.25, along with interest and costs and also cancelled the agreement.

The facts of this case are as follows: During the fall of the year 1961 and until December 10, 1962, R. C. Wetherell owned the equipment and operated a self-service laundromat across from the campus of Montana State University in Bozeman. The business was operated in a building leased from Western Loan and Development Company Incorporated. The business

was listed for sale during that time with a real estate agent, Helen Johnson, for a sale price of $40,000.

Respondent Handrow lived in Wisconsin. In the fall of 1961 he contacted Helen Johnson to assist him in finding a business. He was shown the laundromat and spent an evening discussing the purchase of the business. Handrow testified that he would have purchased the laundromat, based on the representations made at that time, if he had had the mink sold from his mink farm in Wisconsin, and that he relied upon the representations concerning the business made at that time.

Subsequent to looking at the laundromat business and during the following year the respondent and Mrs. Johnson had some correspondence concerning the purchase of the laundromat business and the real property on which the business was operated.

On December 10, 1963, appellant Young purchased the business from Wetherell for $30,000. In the spring of 1964, he spent approximately $4,000, and performed labor, to add a new business of a "cash and carry cleaning establishment" to the laundromat. At the time of the purchase by Young, Mrs. Johnson, the realtor, informed the respondent Handrow the business had been sold.

Respondent Handrow had asked Mrs. Johnson to look out for something to buy; and, in August, 1963, Mrs. Johnson contacted the appellant Young and asked if he would sell the laundromat. The appellant informed her that she could sell it, but he did not sign a listing with her. Mrs. Johnson wrote to the respondent and informed him the laundromat could be purchased for $42,000, and that appellant had put $4,500 in it since he bought it. Immediately after he was notified that the property could be purchased, the respondent again came to Bozeman and looked over the laundromat.

The respondent, who has an eighth grade education and had never before operated a laundromat but had operated other businesses, testified that he investigated a laundromat in She-

boygan, Wisconsin. He talked to the manager of that laundromat to find out whether or not he made a good living, but he just talked to him for five minutes as the manager had no time to discuss anything with him.

On October 12, 1963, the respondent signed a written offer to purchase the property for $37,000 on the usual realtor's printed form for purchase and sale of real estate as filled in by Mrs. Johnson, which was accepted by the respondent, and $1,000 was paid as earnest money.

On October 14, 1963, a formal contract was prepared in accordance with the preliminary contract which recited the payment of $1,000, and provided for a further payment of $7,000 on or before November 1, 1963, and the balance in monthly payments of $574.25 per month. The contract recited that there was an indebtedness owing to the bank on the equipment in the amount of $27,892.75, upon which the appellant was required to pay $613.85 a month.

The respondent paid the $7,000 and made monthly payments of $574.25 from the month of December, 1963, to and including April, 1964, and made no payments on the contract thereafter. Respondent did, however, continue to make rental payments for the building until October 1964, when a receiver for the business was appointed.

On July 22, 1964, respondent mailed by registered mail a notice of recission, as required by statute, alleging the appellant had misrepresented the gross and net profits of the business; that in fact there was no net profit; that he had relied upon those representations; and offered to restore the equipment to the appellant and demanded repayment of what he had paid to the appellant.

Respondent introduced into evidence the receipt signed by the appellant acknowledging receipt of the notice of recission. Apparently the appellant merely forwarded the document to his attorneys, and nothing else was done until the complaint was filed in September 1964.

The only piece of evidence introduced by the respondent which might show misrepresentation was a letter from the realtor stating what she said had been told her by Mr. Young. Mr. Handrow testified that the appellant had written upon a piece of paper a list of some of the fixed costs of the business. The paper apparently was lost.

Both appellant and respondent testified that they met to discuss profits of the operation. Appellant testified respondent did not seem interested, and barely looked at the books; respondent testified he did not understand what the books said.

The district judge, in his findings of facts and conclusions of law held: that appellant hired Mrs. Johnson as his agent; that appellant misrepresented both the value of the equipment and the profits of the business to her, knowing that these were misrepresentations; that Mrs. Johnson transmitted these misrepreentations to the respondent who relied upon them; and that consent to the contract was gained as a result of fraud.

The appellant in his argument to this Court argued that the findings of fact are not substantiated by the evidence and the conclusions of law based on the finding of fact are not in conformity with the law upon the subject. This Court said in Reily v. Maw, 146 Mont. 145, 405 P.2d 440: "Actual fraud is always a question of fact. R.C.M.1947, § 13-310. It is never to be presumed in a case of this nature. Cuckovich v. Buckovich, 82 Mont. 1, 6, 264 P. 930. A long line of cases affirm the rule of the Cuckovich case, to the effect that good faith is presumed and fraud is never presumed. The burden of proving fraud is on the party alleging it."

Under Montana law a contract may be rescinded upon the grounds of fraud. Section 13-303, R.C.M.1947. Fraud may be either actual or constructive. Section 13-307, R.C.M.1947. Actual fraud is defined by section 13-308, R.C.M.1947, which reads:

"*Actual fraud, acts constituting.* Actual fraud, within the meaning of this chapter, consists in any of the following acts,

committed by a party to the conract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract:

"1.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"2.  The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

"3.  The suppression of that which is true, by one having knowledge or belief of the fact;

"4.  A promise made without any intention of performing it; or,

"5.  Any other act fitted to deceive."

Respondent, in his counterclaim, alleged that appellant knowingly misrepresented not only the value of the personal property sold under the contract, but the gross and net profits of the business, and he relied upon such misrepresentation when he bought the business.

In reviewing the correctness of the trial court's decision, we adhere to a long line of decisions in which we have held that we will not disturb the trial court's findings unless there is a decided preponderance of evidence against these findings. Gross v. Holzworth, 151 Mont., 179, 440 P.2d 765; Johnson v. Silver Bow County, Mont., 443 P.2d 6.

However, we feel that in the instant case there is a clear preponderance of the evidence against the findings of the trial court.

In the case of Helena Adjustment Co. v. Claflin, 75 Mont. 317, 243 P. 1063, we stated: " 'In order to go to the jury the plaintiff must make out a *prima facie* case embracing the elements of actual fraud viz.: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon

its truth ; (8) his right to rely thereon; (9) and his consequent and proximate injury.' ''

We hold that the respondent failed to establish the requisite elements of fraud; and, even though this was not a jury trial, the same elements must be established in a trial before a judge.

We affirm the decision of the lower court cancelling the contract, however. We further hold that the property in question be returned to the appellant, and the lease on the property in which the business is located be assigned to the appellant.

We shall review briefly the evidence relating to the alleged fraud. The trial court found that Helen Johnson was appellant's agent. We shall not quarrel with that. Helen Johnson's alleged misrepresentation conveyed to respondent Handrow is contained in a letter of September 16, 1963. This letter is after what appeared to be an exchange of letters, telephone calls and personal visits over a period of more than a year and previous to the time when Young owned the laundromat.

The letter relates in part: "Bob [appellant Young] said he would take $37,000 if you would assume a contract of $1,500 on pressing equipment. This he is paying off at the rate of $103.00 per month and there are 15 payments. There are really 17 but he will pay two of those. * * * He claims that you can average $3,000 per month by keeping open Sundays *which he has not been doing* and I don't believe you would want to either. Last month he said that they took in *$2,800 in 27 days*.

"August shouldn't be one of his best months by any means but *I don't know exactly of course. It looks like you could* make your payments, pay your utilities (I figured $250.00 per month) pay a man $250.00 and a girl a good salary, $325 rent and still clear better than $1,000 per month, * * * . To me it looks like a real good deal but of course only you people can make the decision." Emphasis supplied.

Young's books at the trial revealed that in August, 1963, re-

ferred to in the letter, he actually took in $2611.75 in 26 days rather than $2800 in 27 days.

Helen Johnson at the trial testified that Young had told her he took in $100 per day. Generally, the evidence all pointed to nearly an average of $100.00 per day for the days it was open. It was never open 30 days per month.

The only evidence or testimony as to $3,000 per month as found by the trial court was Handrow's repeated assertion of it. Yet on cross examination he would admit that the representation was $100 per day and that he never stayed open on Sundays.

When the receiver, previously mentioned, was operating the business, for 3½ months, he took in $98.00 per operating day. All of this adds up to a decided preponderance of the evidence against the finding of the trial court that there was a material misrepresentation of gross income.

The trial court further found that a fraudulent misrepresentation was made as to $37,000 being invested in the business and that the value was $37,000. Yet, all the evidence shows that Young bought from Wetherell for $30,000, invested $4,000 in new equipment and performed the labor installing a new cash and carry cleaning establishment. This hardly seems like a material misrepresentation without anything further.

The trial court also found a fraudulent representation of a net income of $1,000 per month conveyed by Helen Johnson. Yet Helen Johnson, in her testimony, stated that Young never did tell her the net. The only reference to a net, other than Handrow's repetitive assertion, is the letter quoted in part above. It seems obvious from the underlined words that Helen Johnson was personally opining in a sales pitch a "real good deal". Thus the decided preponderance of the evidence is against the trial court's finding. We have not discussed what might be meant by the term "net profit" as used in this

case, but it leaves much to be desired if we were to make the attempt.

Really, here, the sole evidence of defendant's right to rescind is his claim of general ignorance. Our brief analysis of the evidence shows none of the prima facie requirements of actual fraud as set out in Helena Adjustment Co. v. Claflin, supra.

The district court was in error. The judgment is reversed and the matter returned to the district court for findings for the appellant on his right to recover possession of the personal property because of default in payments and for such other relief as is just and equitable in the circumstances.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, HASWELL and JOHN CONWAY HARRISON, concur.