DELLA VERNE CLOUGH, Plaintiff and Appellant, *v.* B.
PETE JACKSON, Defendant and Respondent.

No. 11862.
Submitted Nov. 13, 1970.
Decided Jan. 8, 1971.
479 P.2d 266.

Habedank, Cumming & Best, Otto T. Habedank, argued, Sidney, for plaintiff and appellant.

Anderson, Symmes, Forbes, Peete & Brown, Raymond K. Peete, argued, Billings, for defendant and respondent.

MR. JUSTICE HASWELL delievered the Opinion of the Court.

Suit by plaintiff seeking rescission of her mineral deed to defendant on the grounds of fraud, misrepresentation, and undue influence. Defendant counterclaimed to quiet title to the mineral interest in himself on the basis of the mineral deed. From the final judgment of the district court of Richland County in favor of defendant, plaintiff appeals.

The issue on appeal is whether the record before the trial court proves that the mineral deed given by plaintiff to defendant was induced by defendant's fraud, misrepresentation, or undue influence thereby entitling plaintiff to rescind it.

The participants in the transaction culminating in the mineral deed were plaintiff Della Verne Clough; defendant B. Pete Jackson; and defendant's agent, Harold L. Rowland.

Plaintiff is an 80 year old spinster who retired from teaching in 1953. She has resided in Alhambra, California since 1924, and has never engaged in any business activity other than teaching. Plaintiff testified she was unfamiliar generally with the oil industry and its terminology. In 1944 she acquired by inheritance the land which is the subject of the mineral deed involved in the present controversy. This land is a tract of 160 acres located in Richland County, Montana. Plaintiff had previously leased this land to Interstate Oil and Gas Company who, in turn, had made a farmout agreement of their interest in oil and gas leases in the general area to Consolidated Oil and Gas Company; additionally plaintiff had granted an easement for a pipeline through her property. The lease, farmout agreement, and easement were in effect at the time of the mineral deed involved in the instant case.

Plaintiff had seen her land in Richland County three times

prior to execution of the mineral deed in question: once in the 1930's, once in 1944, and once in 1952. She testified she had no information concerning any oil production near her land prior to the conversations involved in the instant controversy.

Defendant B. Pete Jackson is a geologist engaged in independent oil activity who resides in Billings, Montana. He was not only familiar with the oil industry and terminology, but was knowledgeable concerning oil activity, production and production potential in the vicinity of plaintiff's land in Richland County.

Harold L. Rowland, although not a party in the instant suit, was the person directly involved in the conversations with plaintiff concerning her mineral lands and the person who procured the mineral deed from plaintiff. Rowland was the admitted agent of defendant Jackson and at all times acted in his behalf. Rowland is a financially independent graduate geologist, a licensed broker, and the operator of a business concerned with oil and gas exploration for major oil companies. He operates and resides in the Los Angeles area where plaintiff lives. Although familiar with the oil and gas industry and its terminology, he had no personal knowledge of oil activity and production in the vicinity of plaintiff's land and simply imparted to plaintiff what defendant Jackson had told him. Rowland and defendant Jackson had never met.

The mineral deed involved here is a conveyance by plaintiff of a ¼ interest in the minerals in her 160 acre tract of land to defendant. Plaintiff still retains ownership of the remaining ¾ interest in the minerals which is not involved in the present controversy.

On October 30, 1968 defendant Jackson made a telephone call from Billings, Montana to plaintiff's home in Alhambra, California for the purpose of determining whether she would sell any of her mineral interests. Although there are many

conflicts in the respective parties' versions of that conversation, it is clear that defendant Jackson made no representations to her at that time and no understanding was reached concerning any sale by plaintiff of any mineral interests in her land.

The following morning, November 1, 1968, defendant Jackson phoned Rowland in Los Angeles. He asked Rowland if the latter could help him in his efforts to acquire some of the minerals under plaintiff's property by contacting her, explaining the situation, answering any questions she might have, and determining whether she was willing to sell all or any part of the minerals under her land for a price of $25.00 per mineral acre, which was shown to be the highest price he paid for like acreage in the area. There is a conflict in the testimony of defendant Jackson and Rowland as to just what the former told him with respect to the closest oil production to plaintiff's property being 20 miles; Rowland states that defendant told him this, while defendant contends that he was referring to the distance between two producing fields between which plaintiff's land lies. In any event Rowland undertook the requested assignment.

Rowland first contacted plaintiff by telephone late in the afternoon of November 1st and arranged to visit her at her home that evening. He arrived at her home in the early evening and found her alone. Rowland discussed with her the pros and cons of selling all or a portion of her minerals, according to him; according to plaintiff, she understood the discussion to concern the sale of all or a part of her oil and gas rights under the existing lease to Interstate Oil and Gas Company with farmout agreement to Consolidated Oil and Gas Company. When plaintiff indicated her willingness to sell part of her interest, Rowland put in a telephone call to defendant Jackson in Billings in the presence of plaintiff. His purpose was to establish that there existed a meeting of minds of the parties to the transaction and to determine how

defendant Jackson wanted the details of the transaction handled, specifically how payment was to be made.

Defendant Jackson advised Rowland that he wanted the matter of payment handled by a draft on his account in the Midland National Bank in Billings. Upon completion of this call, Rowland typed a conveyance of plaintiff's ¼ mineral interest in her land to defendant Jackson and a draft in payment therefor. He was not satisfied with the form of draft, so he made arrangements to see her again on Sunday morning, two days hence, and complete the transaction.

In the meantime Rowland had another telephone conversation with defendant Jackson. At that time defendant Jackson advised Rowland that he had checked plaintiff's title and there was no question about it; accordingly payment of the $1,000 could be made without the necessity of a draft. Rowland agreed to pay the $1,000 to plaintiff from his own funds for which defendant Jackson was to reimburse him.

Rowland arrived at plaintiff's house at 8:00 a. m. Sunday, November 3rd, as previously agreed. Plaintiff signed the mineral deed conveying a ¼ mineral interest in her land to defendant Jackson. Rowland delivered to her his check for $1,000 as consideration for the deed.

The deed was transmitted to defendant Jackson and recorded by him. Defendant Jackson reimbursed Rowland for the $1,000, reimbursed him for his mileage, and paid him $100 for his services.

In the meantime after signing the mineral deed, plaintiff went to church, was otherwise occupied the balance of the day, and left for a holiday in Ensenada early the following morning. On her return three days later she looked over the deed, didn't like what she saw, and contacted a Los Angeles attorney.

Under date of November 15, 1968, her attorney wrote defendant Jackson stating that "the transaction is at best a contract entered into by mistake" and offered and requested

that it be rescinded. The letter also indicated that Rowland had indicated to plaintiff that a well had been drilled previously approximately 20 miles away but did not disclose "a very recent well which had been drilled or is now being drilled at a distance of ½ mile to 1 mile from Miss Clough's property." The letter concluded by requesting acceptance of plaintiff's rescission offer.

There followed under date of November 26 a letter from plaintiff to defendant Jackson. In it she indicated dissatisfaction and misunderstanding concerning the transaction.

Defendant Jackson refused to rescind and so advised plaintiff's attorney. Plaintiff commenced an action on December 10, 1968 in the district court of Richland County seeking rescission of the mineral deed on the grounds of fraud, misrepresentation, and undue influence, naming defendant Jackson as sole defendant. Defendant answered by general denial and counterclaimed by requesting the court to quiet his title to the mineral interest conveyed by the mineral deed. Plaintiff replied to the counterclaim by general denial.

The trial was held on September 10, 1969 before the Hon. L. C. Gulbrandson, district judge, sitting without a jury. On March 4, 1970 findings of fact and conclusions of law were entered by the district court. In substance they found that neither defendant Jackson nor Rowland fraudulently misrepresented any facts to plaintiff in regard to the mineral transaction; that neither exercised undue influence over her; that she was not incompetent or mentally incapable of consummating the transaction; that plaintiff did not rely on the statements of either to her detriment; that the principal reason she attempted to rescind was her mistaken belief that she had granted defendant the right to drill for oil and gas withstanding the existing lease with Consolidated; that she intended to convey a ¼ interest in her royalty rights which she did in fact convey; and that defendant is the owner of the mineral rights covered by the deed. There followed conclusions of

law to the effect that neither defendant Jackson nor Rowland were guilty of actual or constructive fraud or undue influence; that plaintiff failed to sustain her burden of proof in this regard; that Rowland was not required to advise plaintiff she should consult with counsel before signing the deed; that plaintiff's inexperience in oil and gas matters did not preclude her from reading the deed and inquiring of its contents; and that defendant was entitled to a decree quieting title in him to the interest covered by the mineral deed. Judgment was entered on March 19, 1970 dismissing plaintiff's claim and quieting title in defendant to the interest conveyed by the mineral deed. Plaintiff has appealed from this final judgment.

The issues for review on appeal have been variously stated by plaintiff and defendant. All can be summarized in this single question: Did plaintiff prove misrepresentation, fraud, or undue influence by defendant Jackson?

The principal contention of plaintiff is that Rowland fraudulently misrepresented to her that there was no oil production within approximately 20 miles of her land when in fact there was oil production within approximately 6 miles of her land. Plaintiff argues that defendant Jackson knew this statement to be false at the time it was made; that she relied upon this misrepresentation and was induced thereby to sign the mineral deed; and by reason thereof she is entitled to rescission of the deed.

The leading case of Lee v. Stockmen's Nat. Bank et al., 63 Mont. 262, 207 P. 623, sets forth the elements of proof necessary to establish actual fraud based on misrepresentation:

"In order to go to the jury the plaintiff must make out a *prima facie* case embracing the elements of actual fraud, *viz.:* (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and

in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

To the same effect see Helena Adjustment Co. v. Claflin, 75 Mont. 317, 243 P. 1063; Young v. Handrow, 151 Mont. 310, 443 P.2d 9. Actual fraud is always a question of fact. Section 13-310, R.C.M.1947.

It is undisputed that the foregoing statement was made to plaintiff by Rowland. It is equally clear that this statement was inaccurate and incorrect insofar as the mileage was concerned. It is equally apparent that the statement was not made with fraudulent intent but was due to a misunderstanding by Rowland as to what defendant Jackson had told him over the telephone.

This statement was made in response to plaintiff's inquiry during the evening of Friday, November 1, concerning whether Rowland "had any knowledge about the oil activity in the area of her property in Montana." Rowland told plaintiff "I must confess to complete ignorance. I can only repeat what I have been told over the phone that very morning by Mr. Jackson." Defendant Jackson testified that what he told Rowland was this:

"My conversation [with Rowland] was that [plaintiff's] minerals were located approximately halfway between two small fields and were about 20 miles apart. I also told [plaintiff] on the phone that I was not looking at a map where the well was on, that I was looking at a land map which did not show locations and that her land was located approximately 20 miles between these two fields that were approximately 20 miles apart, and this was the only conversation that was had."

There is no evidence that defendant Jackson knew or had any reason to know of the inaccurate statement made by Rowland to plaintiff. Thus the mileage inaccuracy was due to honest mistake without fraudulent intent. Fraudulent in-

tent being a necessary element of actual fraud based on misrepresentation (section 13-308, R.C.M.1947; Lee v. Stockmen's National Bank, supra) its absence here under the district court's findings defeats plaintiff's contention.

■ This mileage inaccuracy is of questionable materiality in any event. Production was from wells in different oil fields beyond the site of plaintiff's land. The producing fields were the Fairview field located northeast of plaintiff's land and the Brorson and South Brorson fields located southwest of plaintiff's land. Plaintiff's land is located between the two. There had been no producing wells outside the Fairview and Brorson fields. The Hay Creek field, where plaintiff's land is located, had not yet been discovered. At the time of the mineral transaction here involved, there had been numerous dry holes between plaintiff's land and the two producing oil fields indicating, according to defendant Jackson, that any production from plaintiff's land had no connection with the production from the two established fields. The materiality of Rowland's representation being a necessary element of plaintiff's proof (Lee v. Stockmen's National Bank, supra), its absence defeats plaintiff's contention here.

■ Finally, there is substantial evidence that plaintiff herself did not consider the statement of Rowland material, did not rely thereon, and was not induced thereby to sign the mineral deed. Plaintiff's exhibit #5, a letter from her Los Angeles attorneys to defendant Jackson dated November 15, 1968 does not assign this statement as a basis for requesting rescission. Plaintiff's exhibit #4, a letter from plaintiff to defendant Jackson dated November 26, 1968, makes no mention of this statement. Plaintiff herself testified at the trial concerning her reasons for wanting to rescind:

"Q. Okay, other than the reasons stated in this letter [plaintiff's exhibit #4], were there any other reasons you wanted to rescind this deed?"

(Objection, ruling by court, and readback of question.)

"A. Well, I had told them definitely that I didn't want to sell, absolutely didn't want to sell.

"Q. And that's your only other reason, is that correct, Miss Clough?

"A. Well, yes. My sister had said, 'Don't part with the land,' and, of course—"

The first conceivable reference to Rowland's statement as a basis for rescission was an oblique and arguable reference contained in the complaint filed by plaintiff's Montana attorneys:

"On the 3rd day of November, 1968, defendant's agent fraudulently informed plaintiff that there was no oil or gas well drilled or about to be drilled within ten miles of the above-described premises * * *."

This was subsequently amended by substituting "20 miles"

The foregoing facts constitute substantial evidence that the use of Rowland's statement as a basis for rescission was an afterthought, and was not a material factor in inducing plaintiff to sign the mineral deed. The materiality of the representation and plaintiff's reliance thereon to her detriment must be proved by plaintiff to enable her to prevail. Lee v. Stockmen's National Bank, supra. The absence of materiality and reliance defeats plaintiff's claim based on the indicated statement of Rowland here.

Plaintiff next argues that Rowland's quotation of national statistics to plaintiff indicating a success ratio for wildcat wells of one producing well to ten dry holes misled plaintiff as to the value of the minerals under her land. According to plaintiff, the success ratio is demonstrably higher in the area where plaintiff's land is located.

This argument is without merit. There is no contention here that the consideration of $1,000 paid plaintiff for her mineral deed was inadequate or unfair; all evidence indicates otherwise. Rowland made no representation concerning the success ratio in the area of plaintiff's land nor did plaintiff make any such inquiry of Rowland; and subsequent drilling has proved

that the Hay Creek field, in which plaintiff's land is located, is extremely limited in size and that there is no communication or relationship between oil production and success ratios in this field and the two producing oil fields between which it is located.

Plaintiff's next contention is that Rowland misrepresented the contents of the mineral deed. She says that he neglected to explain the difference between conveying a royalty interest and a mineral interest. As a result, plaintiff contends that she thought she was conveying $\frac{1}{4}$ of her $\frac{1}{8}$ landowner's royalty interest under her lease with Interstate Oil and Gas Company, which amounts to a 1/32 interest in oil production on her land, or $3\frac{1}{8}\%$ of gross production, being $\frac{1}{4}$ of the landowner's royalty, rather than $\frac{1}{4}$ of her 100% ownership of the mineral rights in her land, which in case of actual production would be $3\frac{1}{8}\%$ of gross production. So that actually, in the event of production being had from the leased property, the shares of plaintiff and defendant would be exactly in conformity with plaintiff's contention. Plaintiff goes on to say that she was not given the opportunity to read the mineral deed before she signed it and didn't realize what she had done until her return from Ensenada several days later.

This is directly contrary to the testimony of Rowland contained in his deposition received in evidence at the trial. He states that he fully explained in detail that defendant Jackson was only interested in purchasing a mineral interest and accordingly there was never any reference to or discussion of royalty interests. He denies that plaintiff was given no opportunity to read the deed before signing it, but on the contrary that she read it by herself in the bright sunlight coming through the window early that Sunday morning. Rowland was with plaintiff for about an hour that morning.

As it is the duty and function of the trial judge to resolve such conflicts in the evidence, his findings will not be disturbed on appeal where, as here, they are based on sub-

stantial, though conflicting, evidence. Fausett v. Blanchard, 154 Mont. 301, 463 P.2d 319 and cases cited therein. The trial judge simply believed the testimony of Rowland and disbelieved the testimony of plaintiff on this point.

Plaintiff also contends that defendant, through his agent Rowland, did not advise her of the drilling of a well on the Ullman property adjoining plaintiff's land. She argues that this non-disclosure coupled with Rowland's statement that there was no oil activity in the area misled her.

Rowland's testimony indicates that he advised plaintiff that Consolidated Oil and Gas Company was committed to drill a well in the general area, the specific location of which they did not know but which was not to be on her land. Additionally, plaintiff's testimony that she learned of this through a letter written by a Mr. Henderson to her sister in Nebraska and forwarded to her in California is suspect because of the time sequence which she was unable to explain, there being only two days between the date of Henderson's letter to her sister in Nebraska and the date of her California attorney's letter to Jackson disclosing this knowledge.

Here again, the trial judge simply considered Rowland's statement in the light of the surrounding circumstances and found no fraud.

Plaintiff finally argues that constructive fraud is present in the instant case based on (1) the age, mental condition, and physical condition of plaintiff, (2) the superior knowledge of defendant and his agent, Rowland, and (3) the undue influence exerted by defendant Rowland upon her.

Constructive fraud is defined by statute, section 13-309, R.C.M.1947 as:

"*Constructive fraud.* Constructive fraud consists:

"1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or,

"2. In any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud."

Undue influence is a species of fraud that negates free consent to a contract or conveyance and is defined by section 13-311, R.C.M.1947 as follows:

*"Undue influence—in what it consists.* Undue influence consists:

"1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking an unfair advantage of another's weakness of mind; or,

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

First plaintiff contends that because of her age, mental condition, and physical condition, together with other circumstances, she was particularly susceptible to the importunities and influence exerted on her by Rowland. The other circumstances to which she refers are her marital status, lack of experience in business affairs, lack of knowledge of the oil business, and the absence of any opportunity to secure outside advice because of the rapidity of the transaction.

These contentions are not borne out by the evidence at the trial. There is no evidence whatever of plaintiff's incompetency or inability to handle the transaction in question. On the contrary the evidence shows that she was exceedingly astute and was not susceptible to being talked into anything she didn't want to do. The evidence also shows that she had ample opportunity to secure outside advice had she wished to do so as she had done on previous occasions.

Secondly, plaintiff contends that both defendant and his agent had superior knowledge of the value of plaintiff's minerals and therefore had the duty to fully and accurately disclose to her all material facts concerning her property which they failed to do.

This contention must fail. Plaintiff does not contend that the consideration paid her for the mineral deed is inadequate or unfair; all the evidence is otherwise. Thus the value of her minerals is not germane to any issue in the instant suit. Neither inexperience nor inferior knowledge will excuse plaintiff from reading the deed and observing that it clearly conveyed a mineral interest and not a royalty interest, nor in failing to secure outside advice. Superior Oil Company v. Vanderhoof, D.C., 297 F.Supp. 1086. If the law were otherwise, all transactions between persons having unequal knowledge, experience, or expertise would be suspect and ordinary business transactions with laymen would be jeopardized if not completely eliminated.

Finally plaintiff contends that she was a person subject to undue influence, Rowland had both the opportunity and disposition to exert undue influence, and he did exert undue influence to accomplish a sale of minerals from a person who did not wish to sell, citing 25 Am.Jr.2d Duress and Undue Influence, § 36, p. 397 and Murphy v. Nett, 47 Mont. 38, 130 P. 451, in support. Additionally plaintiff contends there is a presumption of undue influence from an improvident transfer of property by one who is mentally infirm, citing as authority Wixson v. Nebraska Conference Assn., etc., 122 Neb. 771, 241 N.W. 532; Dowie v. Driscoll, 203 Ill. 480, 68 N.E. 56; In re Miller's Estate, 16 Cal.App.2d 141, 60 P.2d 492; and Good v. Zook, 116 Iowa 582, 88 N.W. 376.

Plaintiff's contention is not borne out by the evidence. There was no confidential relationship between plaintiff and Rowland. She had never met him before and had no reason to trust him. He exerted no undue influence on her but merely attempted to arrange a sale of her mineral interest. Even if her statement that he urged her "to sell just a little" after she had indicated she didn't want to sell is given full effect, it falls far short of establishing undue influence. The absence of motive or personal interest in the results of the transaction

on Rowland's part belies the exercise of undue influence by him. The consideration for the deed was substantial, fair and adequate. The transaction was not improvident on her part. Plaintiff was not mentally infirm, but on the contrary perfectly competent to handle her own affairs including the transaction in question. The evidence at the trial simply does not bear out these contentions by plaintiff nor place her within the ambit of the legal authority she cites. Thus there was sufficient evidence to support the trial court's findings.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DALY and CASTLES, concur.