JOHANNA KRETZSCHMAR, Plaintiff and Respondent, *v.* DOUGLAS B. BICKERSTAFF, and SARAH S. BICKER-STAFF, Defendants and Appellants.

No. 12001.
Submitted August 31, 1971.
Decided October 26, 1971.
489 P.2d 1285.

Anderson, Symmes, Forbes, Peete & Brown, Raymond K. Peete, argued, Billings, for defendants and appellants.

Loren J. O'Toole, argued, Plentywood, for plaintiff and respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is a quiet title action by plaintiff Johanna Kretzschmar against defendants Douglas B. Bickerstaff and Sarah S. Bickerstaff, husband and wife, resulting from a disputed sale of mineral rights to defendants and their predecessor in interest. The cause was tried by the district court in Sheridan County, siting without a jury. From a judgment in favor of the plaintiff, defendants appeal.

Defendant Bickerstaff is an oil lease broker and originally was dealing with plaintiff, and her husband now deceased, on behalf of the United States Smelting Refining and Mining Company. For his efforts Bickerstaff was to receive as his commission a twenty-five percent interest in minerals purchased. This particular transaction took place at the residence of plaintiff, and her husband in New York. The property involved was then in probate proceedings in Sheridan County and was coming to plaintiff from her father's half brother.

In May 1963, plaintiff and her husband executed two mineral deeds on land in Sheridan County, Montana. Deed #1 was in favor of United States Smelting Refining and Mining Company conveying an undivided 120/320ths mineral interest. Deed #2 was in favor of defendant Bickerstaff conveying an undivided 40/320ths mineral interest in the same property, described as follows:

"Township 35 North, Range 58 East:

Section 8: S½. (South one-half)."

Deed #1 was placed in escrow with The First National Bank,

Midland, Texas, the bank of the United States Smelting Refining and Mining Company, together with a 30 day sight draft payable upon approval of title, in the amount of $9600, in favor of plaintiff and her husband. Deed #2 was delivered directly to defendant Bickerstaff, although the escrow bank draft also covered this transaction.

The face of the draft instrument for $9600 contained the following words:

"In consideration for an undivided mineral interest under the following described land: Twp. 35 North, Rge. 58 East: Section 8: S½, (South one-half). Sheridan county, Montana."

The draft and deeds were executed on May 15, 1963. There was no specific interest stated in the draft as far as acres or an undivided one-half (½) interest in the tract, although the mineral deeds were specific in stating 40/320ths and 120/-320ths.

Within the 30 day sight draft period, it appeared that one Hilda Osksa was also claiming an interest in the same minerals. Defendant Bickerstaff prepared an authorization to the bank in Midland, Texas and forwarded it to plaintiff and her husband for their signatures to extend the payment of the draft. This was done and sent to the bank on June 18, 1963. This authorization contained this language:

"* * * until such time as title to one-half of the mineral rights on the above-described land is quieted in our favor."

Bickerstaff was subsequently advised by his attorneys that plaintiff and her husband could not establish ownership of the mineral interest conveyed, because Hilda Osksa had a prior claim to a portion of the mineral interest which would represent a potential reduction in the amount of interest claimed by the Kretzschmars.

On November 2, 1963, Bickerstaff wrote to the Kretzschmars proposing a settlement whereby they would receive three-fourths of the mineral interest conveyed by the two deeds,

therefore payment to the Kretzschmars was proposed to be reduced by twenty-five percent.

In answer to Bickerstaff's letter of November 2, 1963, Kretzschmars wrote Bickerstaff on November 16, 1963, acquiescing to the proposed settlement. They raised no issues about the reduced consideration, nor did they argue that if settlement with Hilda Osksa was reached, said consideration should not be reduced.

Apparently the proposed settlement was not acceptable to Hilda Osksa, so on February 6, 1964, Bickerstaff wrote to the Kretzschmars proposing a new basis of settlement of the Osksa claim, which was 50/50 as between the Kretzschmars and Hilda Osksa. Enclosed with this letter were *new* mineral deeds from the Kretzchmars (1) to United States Smelting Refining and Mining Company conveying a 60/320ths mineral interest, and (2) to Bickerstaff conveying a 20/320ths mineral interest; together with a new draft in the amount of $4800, which reduced the minerals and consideration by one-half. Kretzschmars never signed the new deeds nor accepted the new draft.

Bickerstaff received a letter dated February 24, 1964, from Mrs. Kretzschmar in answer to his letter of February 6, in which Mrs. Kretzschmar stated an attorney was going to be consulted regarding her title and contract would be made with Bickerstaff later. Subsequent to that date, no contact was made.

On December 15, 1964, United States Smelting Refining and Mining Company quitclaimed all its right, title and interest in the minerals under the Kretzschmar land to Bickerstaff for $1500. Original escrow in The First National Bank of Midland, Texas remained unchanged.

In May 1968, Kretzschmars commenced a quiet title action against Hilda Osksa; Mr. and Mrs. Bickerstaff were not named as parties defendant in the action. A decree was entered in favor of the Kretzschmars; Hilda Osksa appealed to the Mon-

tana Supreme Court. Pending appeal, in a negotiated settlement of all rights the Kretzschmars and Bickerstaffs quitclaimed to Hilda Osksa (1) an undivided one-fourth interest in said minerals, and (2) the land-owner's royalty being held in the suspense account of Sun Oil Company. The Bickerstaffs in their quitclaim deed reserved the claim of Bickerstaff against Mrs. Kretzschmar's one-fourth of the minerals.

On April 30, 1969, plaintiff Johanna Kretzschmar filed a quiet title action against Bickerstaff, subsequently filing an amended complaint naming Mrs. Bickerstaff as a party defendant. Bickerstaffs answered by general denial and counterclaimed for a decree quieting title in themselves. Following trial without a jury, the district court entered findings of fact, conclusions of law and judgment for Johanna Kretzschmar.

Generally stated, the findings of fact took judicial notice of the probate proceedings set forth above; the quiet title action between Kretzschmars and Hilda Osksa; and, the voluntary settlement by plaintiff with Hilda Osksa after a district court judge ruled in her favor. The court's findings set forth the facts as they occurred together with the finding that plaintiff informed defendant Bickerstaff "the deal was off" after his proposal to reduce the mineral interest and consideration by new deeds and draft. The findings found plaintiff to be an immigrant of limited knowledge and defendant to be an experienced oil man, dealing in oil properties as his principal business; that the sale was a purported sale in gross of plaintiff's interest for $9600 and not subject to reduction in consideration dependent on her actual acre interest. The findings further found that defendant was aware of, but did not intervene in the suit between plaintiff and Hilda Osksa; and, that plaintiff and her predecessors in title have for a period exceeding five years been in continuous and undisputed possession of the mineral interest at issue. From the court's findings, it entered the following conclusions of law:

"1. No contract for the purchase of the mineral interest

set forth above ever existed and there was no meeting of the minds between the Plaintiff and the Defendants herein.

"2. The purported contract was repudiated by the Defendant when the new offer was made.

"3. The defendants were not diligent in asserting their alleged title and interest in said property.

"4. The purported contract was a sale in gross without the privilege of proportionate reduction.

"5. The plaintiff and her predecessors in title are the owners of an undivided 80/320ths interest in the oil, gas, and other minerals in and under the above described property and of all thereof without restriction or qualification and that the defendants have no right, title, estate, or interest in, or lien, or encumbrance upon the aforedescribed property, or any part or parcel thereof.

"6. The plaintiff is entitled to a decree of this Court determining that all monies held by Sun Oil Company as accrued royalties from production shall be paid directly to the plaintiff and are the property of the plaintiff.

"7. The plaintiff is entitled to a decree of this Court allowing her Court costs."

The Bickerstaffs appeal from the final judgment and present the following issues for review:

1. Did the district court err in its finding of fact VII, that plaintiff informed defendant that "the deal was off"?

2. Did the district court err in its finding of fact XII, that defendant Bickerstaff represented to plaintiff that she owned an undivided one-half interest in the oil, gas, and other minerals in and under the property which is the subject of this action; that the sale was not based on a fixed amount of dollars per mineral acre; and that defendant agreed to pay plaintiff $9600 regardless of plaintiff's interest?

3. Did the court err in its finding of fact XIII, that defendant was required to intervene in the lawsuit between plaintiff and Hilda Osksa?

4. Did the court err in its conclusion of law No. 1, that there was neither a contract for purchase of the minerals owned by plaintiff, nor a meeting of the minds between plaintiff and defendants?

5. Did the court err in its conclusion of law No. 2, that the purported contract between the plaintiff and defendant Bickerstaff was repudiated by him?

6. Did the court err in its conclusion of law No. 3, that the defendants were not diligent in asserting their alleged title and interest in said property?

7. Did the court err in its conclusion of law No. 4, that the purported contract was a sale in gross without the privilege of proportionate reduction in the defendants?

8. Did the court err in its conclusion of law No. 5, that the defendants had no right, title, estate, or interest in, or lien, or encumbrance upon the property which is the subject of this action, or any part or parcel thereof?

9. Did the court err in awarding all monies held by Sun Oil Company as accrued royalty from production should be paid directly to plaintiff and are the property of plaintiff?

10. Did the court err in failing to grant to defendants the relief requested by them in the prayer in their amended answer and amended cross-complaint?

Plaintiff (respondent herein) filed a motion to dismiss this appeal for the reason that exceptions to the findings of fact as made by the district court were not entered by the defendants (appellants herein). In support of her motion plaintiff cited Rule 52, M.R.Civ.P. Thereafter, defendants filed an answer to the motion to dismiss and a brief in support. On May 13, 1971, this Court ordered:

"* * * that ruling upon the motions be reserved until submission of the appeal by oral argument, at which time counsel for the parties may argue their respective motions."

The motions were duly briefed and argued to the Court, together with the appeal.

Plaintiff argues that she is entitled to a dismissal based on defendants' failure to file exceptions to the findings of fact made by the district court and urges in support of her motion to dismiss: Rule 52, M.R.Civ.P.; Section 93-5305, R.C.M.1947; State ex rel. Bennett v. Dowdall, 157 Mont. 11, 482 P.2d 572, 28 St.Rep. 237, and cases affirmed by *Dowdall*.

Rule 52, M.R.Civ.P. has been before the Court frequently and there still appears to exist a gray area of misunderstanding. The rule was fully discussed in *Dowdall* and copies mailed to all members of the Montana Bar. The rule does not, nor does the case law, speak in terms of "dismissal" for failure to except to *findings*. It is true that this is the unavoidable result in some cases where the findings control and they can not, under the rule, be questioned on appeal.

The rule itself has always been—*the judgment will not be reversed for defects in the findings,* unless exceptions be made in the court below for a defect in the findings or in a finding. The citations relied upon by plaintiff say nothing more than this. If the findings in the instant matter were controlling the judgment would not be disturbed, but they are not. The Court will, as the rule directs, accept the findings of fact for failure to except to them, deny the motion to dismiss, and examine the legal conclusions.

Here, we have a quiet title action by the plaintiff alleging that defendants claim right, title, estate or interest in the mineral property and an answer and crosscomplaint by defendants setting up a contract of sale and asking title be quieted in defendants at a price of $60 per mineral acre. To this pleading plaintiff filed a reply in the nature of a general denial. We have no affirmative defense to defendants' cross-complaint pleaded by the plaintiff.

The trial court findings Nos. III, IV, V, and VI demonstrate an offer by the defendants, accepted by the plaintiff, reduced to writing, and the consideration held in escrow for 30 days upon the recognition by both parties that the title

was clouded. At the expiration of the 30 days an extension. of payment of consideration was granted in writing to an indefinite date, to permit the title to be quieted. The only legal conclusion to flow from these facts is a contract in writing by the dictates of basic contract law and particularly so in this instance where there are no affirmative defenses alleged by plaintiff for the court to consider.

The court's finding No. VII constitutes a new offer by defendants based on a belief the plaintiff's mineral interest would be reduced. This offer was refused by plaintiff and the court accepted her testimony that she told defendants "the deal was off;" neither is sufficient in law to rescind or modify a written contract. Sections 13-905 through 13-907, R.C.M.1947.

We could discuss the contract terms and the judicial notice taken by the court of the legal actions wherein plaintiff was awarded exactly what she contracted to sell, and then voluntarily gave one-half to Hilda Osksa to settle an appeal; however, the court's finding No. XII indicates a sale in gross by plaintiff and these matters are therefore settled by acceptance of this finding.

The finding that the plaintiff and defendants were of unequal knowledge in relation to business, the oil business in particular, is of no moment standing alone. This is particularly true since there is no allegation of fraud, undue influence nor the like in this case. Clough v. Jackson, 156 Mont. 272, 479 P.2d 266, 28 St.Rep. 38.

In view of our finding of a contract which has not been rescinded, we need not discuss the balance of the issues raised.

The judgment of the trial court is reversed and the conclusions of law of the trial court stricken, except conclusion. of law No. 4, concerning a finding of a sale in gross. The cause is remanded to the district court with instructions to enter judgment accordingly.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, CASTLES and HASWELL, concur.