No. 85-541

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

JAMES F. FLEMING, III,

        Plaintiff and Appellant,

    -vs-

FLEMING FARMS, INC., FLEMING LAND
PARTNERSHIP, and WILMA M. (FLEMING)
WEST,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Twentieth Judicial District,
                In and for the County of Lake,
                The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Larrivee Law Offices; Noel Larrivee, Missoula,
        Montana

    For Respondent:

        McGarvey, Lence & Heberling; John A. Lence, Kalispell,
        Montana
        Yardley & Yardley; Dan Yardley, Livingston, Montana

---

Submitted on Briefs: Feb. 20, 1986

Decided:   April 30, 1986

Filed: **APR 30 1986**

---

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, James F. Fleming, III, appeals from the judgment of the District Court, Twentieth Judicial District, County of Lake, entered following the District Court's order granting the motion for summary judgment of Wilma M. (Fleming) West in favor of all defendants. We affirm.

Fleming raises three issues for our review:

1. Whether the District Court abused its discretion in granting summary judgment because numerous issues of material fact exist;

2. Whether there was actual or constructive fraud committed upon Fleming;

3. Whether there was extrinsic fraud committed in the probate of an estate in which Fleming was an heir.

The record of this case shows that in the early 1940's James F. Fleming, Jr., and his wife, Wilma M. Fleming, presently Wilma M. West, began a ranch-farm operation near Pablo, Montana. Over the next 30 years the Flemings acquired approximately 800 acres of commercial farm land. During this period the Flemings had eleven children, five sons and six daughters, including appellant, James F. Fleming, III.

During 1975 James, Jr. retained Dan Yardley, an attorney, and David Green a certified public accountant to advise him with his estate planning. As part of this estate planning, it was decided to incorporate the family business, excluding the land holdings. As a result, in 1975, Fleming Farm, Inc. was formed as a Montana corporation. A total of 2,000 shares of class "A" voting stock were issued with 1,500

shares issued to James, Jr., and 500 shares to Wilma. In addition, 4,313 class "B" nonvoting shares were issued with James, Jr. receiving 3,225 shares and Wilma receiving 1,078 shares. Late in 1975 the Flemings gave to each of their five sons 68 shares of the class "A" stock and 172 shares of the class "B" stock.

As a further part of the estate planning, Fleming Land Partnership was formed and all of the commercial land was conveyed to the partnership. James, Jr. retained an 80.98% ownership interest, Wilma a 10% ownership interest and the eleven children each received a .82% ownership interest. The partnership leased its land to the family corporation.

James, Jr. died on October 12, 1975. As specified in his Will, Wilma was appointed personal representative. Wilma retained Dan Yardley to represent her in that capacity. Under the terms of James, Jr.'s Will, one-fourth of his net estate was distributed equally to the eleven children. One-half of the net estate was placed in Trust "A" with income to Wilma, with the right of request for the corpus, thus qualifying for the estate tax marital deduction available at that time. The remaining one-fourth of the estate was placed in Trust "B" with income to be distributed either to the wife or children.

In the fall of 1977, a distribution "in kind" of the estate assets was completed. Once the distribution had been made, pursuant to the terms of Trust "A", Wilma requested in writing that the corpus of that trust be conveyed to her, thus terminating the trust. At the request of Wilma, Trust "B" was terminated by court order and the property was distributed equally to the eleven children, thus in effect giving the children one-half of the net estate.

Wilma received James, Jr.'s corporate stock as the major portion of her distributive share, while the children received their father's partnership interest. The division of James, Jr.'s partnership interest among the eleven children equaled a 7.36% interest to each, which combined with the .82% interest earlier given to each child totaled an 8.18% interest in the partnership per child.

In the spring of 1980, the Internal Revenue Service contested the valuation of certain assets of the estate. In 1981, an agreement was reached with the I.R.S. increasing the valuation of some assets of the estate. A dispute with the Montana Department of Revenue was resolved on a similar basis. Under the terms of these agreements, the gross valuation of the estate of James, Jr. was increased from $659,109 to $805,203. All of the additional taxes paid by the revaluation were paid by Wilma. There was no attempt to revise the in-kind distribution of assets made in 1977 or to recoup any of the additional costs from the children.

During the winter and spring of 1976, James, III borrowed $42,500 from the family corporation for construction of a house for himself and his family. A promissory note dated August 2, 1976, evidenced the indebtedness. James, III made a few payments on the debt, reducing his unpaid balance to $42,196. On January 10, 1978, at a meeting with the other family members, James, III transferred his 240 share interest in the family corporation and 8.18% interest in the family partnership to the family corporation in exchange for the cancellation of the promissory note.

This action arises out of a promise made to James, III by his mother at the January 10, 1978, meeting. James, III testified regarding the promise as follows:

Q. Let's go on. According to the Complaint, you alleged that you were promised the difference in value between the value of the stock and partnership interest and the amount of the note--the difference in those two values when the farm is sold. A. Yes, that's what my mother told me.

Q. Do you know when this happened? When did your mother tell you this? A. I was signing the corporation shares and out of the clear blue sky, she said, "If I ever sell the farm, Jim, I'll give you the rest of your money."

. . .

Q. Let's get back to the promise for a moment. It's my understanding from your testimony as you were signing the back of the corporate stock, signing it back to the corporation, your mother said to you, "If I ever sell the farm, I'll give you the rest of your money." A. That's what she said.

Q. And that was the only time she ever made such a promise? A. Yep.

Q. And that was not the reason that you were signing the corporate stock? A. Not really, I guess.

Q. You were not being induced by that promise to sign the stock? A. No. I felt an obligation to, I guess, do it.

Count I of James, III's complaint alleged that the above promise made by Wilma induced him to convey his interest in the partnership and corporation and constituted fraud, actual or constructive, as well as, undue influence. In count II of his complaint, James, III requested an accounting of the proceeds of the trusts created by the death of James, Jr.

On July 15, 1985, Wilma filed a motion for summary judgment. After considering the pleadings, interrogatories, request for admissions, the depositions of James, III and Wilma, the affidavit of attorney Yardley, Wilma's brief and James, III's oral argument the District Court, having found no genuine issue as to any material fact granted summary judgment to all defendants.

- 5 -

The general purpose of Rule 56, M.R.Civ.P., is to eliminate unnecessary trial, delay and expense. The purpose of the hearing and the motion is not to resolve factual issues, but to determine whether there is any genuine issue of material fact in dispute. The opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy nor merely suspicions. Westlake v. Osborne (Mont. 1986), 713 P.2d 548, 550, 43 St.Rep. 200, 203; Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169. The party moving for summary judgment has the initial burden of showing that there is no genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter of law. Cereck v. Albertson's, Inc. (Mont. 1981), 637 P.2d 509, 511, 38 St.Rep. 1986, 1987-88. Once the movant has met this burden, the party opposing the motion must supply evidence supporting the existence of a genuine issue of fact. Pretty On Top v. Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60; Harland v. Anderson (1976), 169 Mont. 447, 451, 548 P.2d 613, 615. As we will discuss in detail below, we find that Wilma met her burden and the District Court properly granted summary judgment for all defendants as there existed no genuine issue of material fact.

Section 28-2-405, MCA, provides:

Actual fraud, within the meaning of this part, consists in any of the following acts committed by a party to the contract or with his connivance with intent to deceive another party thereto or to induce him to enter into the contract:

(1) the suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

(3) the suppression of that which is true by one having knowledge or belief of the fact;

(4) A promise made without any intention of performing it; or

(5) any other act fitted to deceive.

It is well settled that the mere making of a promise which the promisor fails to keep is not actionable fraud. Svennungsen v. Svennungsen (1974), 165 Mont. 161, 169, 527 P.2d 640, 644; Gallatin Trust & Savings Bank v. Henke (1969), 154 Mont. 170, 175, 461 P.2d 448, 450. Rather, one must prove that the maker of the promise had no intention of performing it when he made it. Howe v. Messimer (1929), 84 Mont. 304, 313, 275 P. 281, 283. This Court has also stated that one must make a prima facie showing of nine elements for a fraud claim to survive. Van Ettinger v. Pappin (1978), 180 Mont. 1, 9, 588 P.2d 988, 993-94. The nine elements are: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance upon the representation. Wright v. Blevins (Mont. 1985), 705 P.2d 113, 117, 42 St.Rep. 1311, 1315; Wortman v. Griff (Mont. 1982), 651 P.2d 998, 1000, 39 St.Rep. 1916, 1918; Cowan v. Westland Realty Company (1973), 162 Mont. 379, 383, 512 P.2d 714, 716; Clough v. Jackson (1971), 156 Mont. 272, 279-80, 479 P.2d 266, 270.

In the instant case, James, III testified that his fraud claim was based upon the promise made by Wilma at the time he

- 7 -

assigned his interest in the corporation and partnership to the corporation in exchange for cancellation of the $42,000 promissory note. James, III also testified that Wilma had no intent to deceive him:

> Q. I guess I asked you this and then you digressed or I didn't get the final answer. When your mother made the promise, did she intend to deceive you? A. No, I don't think she made it in that way, no. I can't imagine--I can't think of my own mother trying to deceive me. That's just, you know, I don't think of it that way, really. I feel like I've been had, but. Let's--Can I say one thing? I have found out--found in the years gone by that Mom does tend to, a little bit, tell people what they--what she thinks that they want to hear because of comparing notes, kind of you could say comparing notes. We figure that she, you know, she used to come back. She would tell me one thing, she would tell John and Lyd another thing, she would tell sister Ruth another thing, you know, about the same thing.

And finally, James, III testified that he did not rely upon Wilma's promise in executing the assignment.

James, III's own testimony clearly establishes that his fraud claim was deficient in that the fourth and seventh elements of the prima facie case were lacking. This the District Court noted in its order granting defendants summary judgment when it wrote:

> Plaintiff's claim of actual fraud fails because, in his own deposition, he admits that only his mother, the Defendant West, ever made any alleged promise to pay him additional money, and that he did not rely upon said promise in signing over his share of the land partnership and stock in the family corporation. Plaintiff further admits that his mother did not intend to deceive him and defendants, therefore, have satisfied their burden of showing that there is no genuine issue as to any material fact as to the issue of actual fraud. By his own admission, there was no intent to deceive and he did not act in reliance upon any representation of his mother.

Section 28-2-406, MCA, provides:

Constructive fraud consists in:

(1) any breach of duty which, without any actually fraudulent intent, gains an advantage to the person

in fault or anyone claiming under him by misleading
another to his prejudice or to the prejudice of
anyone claiming under him; or

(2) any such act or omission as the law especially
declares to be fraudulent, without respect to
actual fraud.

In Mends v. Dykstra (1981), 195 Mont. 440, 448, 637 P.2d
502, 506, we said breach of a duty to disclose material facts
constitutes constructive fraud. As the District Court noted,
James, III's claim of constructive fraud fails for
essentially the same reason his actual fraud claim failed.
That is the record is void of any facts to establish any duty
owed to James, III or that any such duty was breached to his
prejudice.

Finally, Wilma contends the fraud claims are also barred
by the two year statute of limitations. Section 27-2-203,
MCA. The act of alleged fraud took place January 10, 1978,
and the complaint was filed on December 20, 1984. The only
way James, III's claims would not be barred by the statute is
to claim that the statute did not begin to run until
discovery of the alleged fraud. See Turley v. Turley (Mont.
1982), 199 Mont. 265, 273-74, 649 P.2d 434, 438. James, III
apparently made no such showing. Thus, the fraud claims fail
for the reasons stated and because of the statute of
limitations.

With regard to the third claim of count I of James III's
complaint, undue influence, the District Court determined it
was barred by the statute of limitations. Section 27-2-215,
MCA. James, III does not contest this aspect of the summary
judgment on appeal.

Finally, count II of James, III's complaint requests an
accounting of the proceeds of the trusts created by the death
of his father. James, III here contends that because there

exists questions of fact concerning: (1) the value of James, Jr.'s estate; (2) the value of James, III's inherited share of the estate; (3) circumstances surrounding the transfer therefore; and (4) whether there was fraud surrounding the probate of the estate, the summary judgment should be set aside.

The District Court, in granting all defendants summary judgment on count II stated:

> Defendants are entitled to Summary Judgment upon Count Two of Plaintiff's complaint because none of said defendants have ever had any duty to account to any person for anything arising out of the trusts or estates of James F. Fleming, Jr. The Court has reviewed Lake County Probate file No. 4581 in the Matter of the Estate of James F. Fleming, Jr. and finds that the above-named defendants, Fleming Farms, Inc. and Fleming Land Partnership, have absolutely nothing to do with said estate. The above-named defendant Wilma M. (Fleming) West is named individually and not as the Personal Representative of the Estate of James F. Fleming, Jr., and as such individual has no duty or obligation to account to any person concerning said estate or trust which resulted therefrom.

Summary judgment on the claim for an accounting was proper.

We, therefore, affirm the grant of summary judgment by the District Court.

_John C. Sheehy_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Frank B. Morrison_

_John Conway Harrison_

_Fred J. Weber_

_William E. Hunt_

_L. C. Gulbrandson_  .
Justices